THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNEST B. DINORA, Defendant-Appellant.

(Nos. 11809-11937 cons.;

Fourth District—July 25, 1973.

Heckenkamp & Fuiten, of Springfield, for appellant.

Richard A. Hollis, State's Attorney, of Springfield, for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On February 24, 1971, in a case bearing Sangamon County Circuit Court Docket Number 144-71 the grand jury returned a two-count indictment charging that the defendant-appellant, Ernest B. Dinora, on the 18th day of August, 1970, committed the offense of keeping a gambling place in that he knowingly permitted a building located at 212 North Fourth Street, in the City of Springfield, occupied by him and under

his control, to be used as a gambling place in violation of Ill. Rev. Stat. 1969, ch. 38, sec. 28—3. Count II of the indictment was also bottomed upon the same offense as described in Count I but sought the enhanced penalty provided in sec. 28—3 for each subsequent conviction and recited prior convictions of the defendant.

On February 24, 1971, in a case bearing Sangamon County Circuit Court Docket Number 148-71, the grand jury returned a five-count indictment charging the defendant-appellant Ernest B. Dinora with the offense of keeping a gambling place at 212 North Fourth Street on the 5th day of October, 1970. The other counts of the indictment sought enhanced penalty under the provisions of sec. 28—3 of the Criminal Code and recited prior convictions but all counts were keyed to October 5, 1970.

On March 19, 1971, the state's attorney in cause bearing Sangamon County Circuit Court Docket Number 185-71 filed a petition for injunction, to abate a nuisance, under the provisions of Ill. Rev. Stat. 1969, ch. 100½, sec. 14 *et seq.* This petition named Dinora as the party defendant. The petition alleged that Dinora owned the premises at 212-214 North Fourth Street, recited that on November 30, 1970, he had pleaded guilty to a charge of keeping a gambling place at 212 North Fourth Street on May 20, 1969; that on the same day he pleaded guilty to a charge of gambling in that he possessed slips by which racing bets were recorded on May 23, 1969, which said slips were found during a search, pursuant to warrant, of the first floor rooms of 212 North Fourth Street; that the first floor rooms of 212 and 214 North Fourth Street and the basement which underlies them were so integrally related that they constituted a common gambling place "*   *   * and are a public nuisance by sec. 28—3 Criminal Code of 1961, as amended, and continue to constitute such nuisance,   *   *   *." The petition prayed that the court declare all the first floor rooms at 212 and 214 North Fourth Street and the underlying basement, a public nuisance; that the court perpetually enjoin the use of the premises for such nuisance and that the court enjoin, for a period of one year, the use of said premises for any purpose whatsoever.

Ill. Rev. Stat. 1969, sec. 28—3, provides that a gambling place is any real estate used for purposes of gambling and that any person who permits any premises owned or occupied by him or under his control to be used as a gambling place, shall be fined or imprisoned and sub-sec. (a) of sec. 28—3 declares that "such premises is a public nuisance and may be proceeded against as such,   *   *   *." Ill. Rev. Stat. 1969, sec. 37—4, provides, in pertinent part, that the state's attorney of the county of nuisance may commence an action to abate a public nuisance as de-

scribed in sec. 37—1 of the Criminal Code. This section further provides that the proceedings and hearings upon the merits shall be in the manner of "an act in relation to places used for the purpose of using, keeping or selling narcotic drugs, approved July 5, 1957, reference being to Ill. Rev. Stat. 1969, ch. 100½, sec. 14 *et seq*. Ill. Rev. Stat. 1969, sec. 37—1, provides that any building used in the commission of offense prohibited by sec. 28—3 of the Criminal Code is a public nuisance and provides for penalties by fine or imprisonment or both. Ill. Rev. Stat. 1969, ch. 100½, sec. 17, provides that upon the filing by the state's attorney of a complaint to abate a public nuisance the defendant shall be held to answer the allegations of the complaint "\* \* \* as in other civil proceedings." Sec. 18 of the statute provides in pertinent part that "The plaintiff at any time before, but not later than 10 days after, the filing of the answer, \* \* \* may file interrogatories in writing concerning matters material to the allegations of the complaint or respecting the ownership of the property upon which it is claimed the nuisance is maintained. A full answer to each interrogatory under the oath of the defendant shall be filed with the clerk within 10 days after a copy of the interrogatories has been served upon him. For a failure to so answer interrogatories the court may strike the answer to the complaint from the files and enter default and a decree *pro confesso*, and a rule to answer interrogatories may be entered and the court may punish a defendant for contempt of court for a refusal to obey such rule. *No person shall be excused from answering interrogatories under oath on the ground that an answer may tend to incriminate him or subject him to a penalty or forfeiture. The answer shall be evidence against, but not on behalf of, the defendant and it shall not be used against him in any criminal proceeding nor shall he be prosecuted or subjected to a penalty or forfeiture for or on account of any transaction, matter or thing disclosed by him in such answer responsive to the interrogatories*." (Emphasis supplied.)

In the action to abate the public nuisance, and pursuant to sec. 18 of the statute, the state's attorney propounded certain interrogatories to the defendant Dinora, a portion of which, together with defendant's responses, is as follows:

"INTERROGATORY 1) State whether Defendant is the true owner of the premises described in paragraph 1 of the Petition filed herein.

ANSWER TO NO. 1) Yes, together with his wife.

INTERROGATORY 5) State whether any gambling has occurred on the premises described in paragraph 1 of the Petition

filed herein during the period of time the Defendant has owned, occupied or controlled said premises; for each such occurrence of gambling state:

a) The date
b) The participants
c) Which room of the premises it occurred in
d) Whether any record was made of any bet taken or made
e) Who made such record
f) Where such record was kept while in the possession of the Defendant
g) Who has custody of such record at the present time

ANSWER TO NO. 5) Gambling has occurred on the premises described as 212 North Fourth Street on numerous occasions, all within the knowledge of the State's Attorney, the State's Attorney having information as to the dates, the participants, and the particular room where the gambling occurred. No records were maintained thereof, except those that are in the possession of the State's Attorney, the Illinois Bureau of Investigation, the Federal Bureau of Investigation, and the Internal Revenue Service. Never at any time since the premises have been owned by the Defendant has any gambling occurred on the premises known as 214 North Fourth Street.

INTERROGATORY 6) State in which rooms of the premises any monies used for gambling, or any gambling paraphernalia were kept, maintained or stored during the period the premises were owned, occupied or controlled by the Defendant.

ANSWER TO NO. 6) All paraphernalia of former gambling, when in the possession of the Defendant, were located in the front room of 212 North Fourth Street, but all such paraphernalia has been seized either by the State's Attorney of Sangamon County, or the Federal Bureau of Investigation, and is not now in the possession of the Defendant.

INTERROGATORY 7) State the name and address of every person known to the Defendant, his attorneys, agents, or employees, who was a witness to or participant in any gambling, which occurred on the premises while they have been owned, occupied, or controlled by the Defendant; for each such person named, state the date of any gambling he witnessed or participated in, and the room of the premises in which such gambling occurred.

ANSWER TO NO. 7) Richard Mattera made certain baseball bets during the late summer and early fall of 1970 with one Jack Conley, at 212 North Fourth Street."

On August 4, 1971, the trial court entered a decree finding that the defendant Dinora had used the first floor rooms of 212 North Fourth Street to maintain a gambling place in violation of Sec. 28—3 of the Criminal Code, and that the premises were a public nuisance and ordered injunction to issue. The decree also found that the premises at 214 North Fourth Street had not been used for purposes of gambling.

On September 8, 1971, the defendant Dinora filed his Motion to Dismiss and In Bar of Prosecution in criminal cause 144-71 alleging, in effect, that his responses to the interrogatories in the suit brought to abate the nuisance at 212 North Fourth Street, brought him within the immunity provisions of the section of the statute above quoted. On September 8, 1971, prior to commencing trial on the indictment the trial judge heard the motion and denied it as to Count I of the indictment because "Count I it was filed on or before the date that the interrogatories were answered and I do not feel this statute applies in this particular situation." He then dismissed Count II of the indictment, stating "I am holding that Count II, the statute in question, is a complete immunity statute and since Count II, or a portion thereof is based upon May 20, 1969, which was one of the allegations in the injunction suit, constitutes complete immunity." On September 15, 1971, the State's Attorney filed Notice of Appeal from the order dismissing Count II.

The case then went to trial on Count I of the indictment. One of the principal witnesses called by the People was John Thomas Conley who was referred to in the defendant's response to the State's Attorney's interrogatories and whose name was not endorsed on the indictment as a witness before the grand jury. The defendant offered no evidence, and at the close of the Peoples' case, orally renewed his motion to dismiss which the trial judge again denied. This oral motion was made and ruled upon on September 8, 1971.

At the conclusion of the trial defendant was found guilty. On October 8, 1971, the defendant renewed his motion and again urged that prosecution was barred by the immunity provisions of the statute. The motion was denied and defendant was sentenced to a term of one year at the Illinois State Penal Farm at Vandalia. On October 8, 1971, defendant filed his notice of appeal from the order of the court which denied his motion in bar. We have, on our own motion, consolidated the two appeals arising from case 144-71.

On February 24, 1971, in a case bearing Sangamon County Circuit Court Docket Number 148-71 the grand jury returned a five count in-

dictment against the defendant Dinora. Count I charged him with keeping a gambling place at 212 North Fourth Street on October 5, 1970, and Count III charged him with the offense of gambling on October 5, 1970, in that he made a $10.00 wager on the result of a football game. Prior to trial in case 148-71, and following his response to the interrogatories above mentioned, defendant filed the same motion in bar of prosecution predicated upon the statutory immunity, as was filed in case 144-71. The motion was denied; the defendant was tried; found guilty on both Counts I and III and was sentenced to the Department of Corrections for a period of not less than one year and not more than one year and a day; the sentence to run concurrently with the sentence imposed in case 144-71. The evidence during the trial indicated that the football bet in question had been made at the premises at 212 North Fourth Street. In this case too, one of the principal witnesses for the People was John Thomas Conley who had been named in defendant's responses to the interrogatories. Defendant appeals from the order denying his motion in bar of prosecution. The appeal in case 148-71 (our general number 11937), has been consolidated with the two appeals in case 144-71 (our general number 11809) since all of the appeals have a common question of law.

██ The People urge that the order denying defendant's "Motion to Dismiss and In Bar of Prosecution" was an interlocutory order from which no appeal lies and that consequently this court has no jurisdiction of defendant's appeal and that the appeal must be dismissed, citing *People v. Miller*, 35 Ill.2d 62, 219 N.E.2d 475. In *Miller*, the defendants were charged with the crime of rape and during the trial and at the close of the evidence the jury was unable to reach a verdict and a mistrial was declared. Later, on motion of the State, and without notice to the defendants the rape indictment was dismissed by the court. On the same day the grand jury returned a new indictment which charged the defendants with rape of the same person and additional counts charging them with indecent liberties and contributing to the delinquency of the victim who was a minor. The defendants filed a motion to dismiss the new indictment and the trial court dismissed those counts which charged the indecent liberties and contributing charges but denied the motion for dismissal of the counts charging rape. As on appeal the supreme court held that no appeal will lie from an interlocutory order and that the motion to dismiss the rape counts was an interlocutory order. The defendant's motion here, while titled "Motion to Dismiss and In Bar of Prosecution" is, despite the title, a motion in bar. It does not fall within any of the grounds upon which the defendant may move to dismiss a charge as set forth in Ill. Rev. Stat. 1969, ch. 38, sec. 114—1.

Neither does the motion in bar fall within the purview of Ill. Rev. Stat. 1969, ch. 38, secs. 116—1, 116—2. Sec. 116—1 governs motions for new trial which is not applicable to defendant's legal posture and sec. 116—2 deals with motions in arrest of judgment but the grounds upon which such a motion will lie do not encompass a plea in bar. Defendant's motion in bar effectively presented to the trial court the issue as to whether or not defendant's prosecution was barred and we hold that the order denying the relief sought was a final and appealable order.

The sole issue posed by these appeals is whether prosecution under the two counts of the indictment was barred by immunity granted by the statute.

■■■ The Fifth Amendment to the Federal Constitution and sec. 10 of article I of the 1970 Constitution of the State of Illinois secures to the individual the right against self-incrimination. This right or privilege sometimes conflicts with the public interest in securing testimony incriminatory to the witness, and the Congress and State legislatures have resolved the conflict by enacting statutes which compel the incriminating testimony but prohibiting its use in subsequent prosecution of the witness. The scope of the immunity granted in the various legislative enactments varies. Some grant "transactional immunity" which is complete and prevents prosecution based on any matter about which the witness testifies. Others grant "use immunity" under which only the testimony of the witness is prohibited to be subsequently used against him, and a third formula is denoted as "use and fruits immunity". Under this latter formula the witness may be prosecuted but his own testimony or any of the "leads" developed from his testimony may *not* be used against him.

We see no point in lengthening this opinion by tracing the legislative history of these several types of immunity statutes nor do we perceive any reason to discuss at length the interpretations and reactions of the courts to the various types of statutes. Reviews of the problem generally begin with *Counselman v. Hitchcock*, 142 U.S. 547 and currently end with *Kastigar v. United States* (U.S.), 32 L.Ed.2d 212, 92 S.Ct. 1653. For a general discussion of the history of the several types of immunity statutes see Vol. 67, No. 1, p. 106 Northwestern University Law Review.

■■ The statute here in question, in our view, grants transactional immunity. The language is clear, unequivocal and submits of no other interpretation "The answer * * * shall not be used against him in any criminal proceedings *nor shall he be prosecuted * * * on account of any transaction, matter or thing* disclosed by him in such answer responsive to the interrogatories." Language identical to the Illinois statute

was interpreted by the Supreme Court of the United States in *Brown v. Walker,* 161 U.S. 591. There the Act of Congress granted immunity to the witness "* * * on account of any transaction, matter or thing, concerning which he may testify * * *." The Court held that the words "transaction, matter or thing" bestowed transactional immunity, *i.e.* a complete and absolute immunization from subsequent prosecution.

■■ "The transaction, matter or thing" concerning which defendant was queried, and to which he responded, in the interrogatories, embraced the period of time covered by the indictments as well as the premises in question. The answers to the interrogatories were sufficiently responsive to fall within the statutory grant, and they were clearly incriminating. Among other things the defendant revealed the name of an individual who subsequently became one of the State's leading witnesses.

■■ The People argue that defendant should have "claimed his privilege" and that failure to do so constituted a waiver of the statutory immunity. The statute is self-executing. That defendant be required to claim the immunity so clearly and unequivocally bestowed is to imply a choice not present. The provisions of the statute command defendant to answer, and provides harsh and compelling sanctions attendant upon non-compliance. There can be no waiver when the defendant does not have the right to refuse; under this circumstance there is no election as to whether he will or will not testify. His only choice is to answer or suffer the sanctions authorized by the statute. For these reasons we see no merit in the Peoples' argument on this point.

Accordingly the judgment of the trial court dismissing Count I of the indictment in case number 144-71 is affirmed and the judgment entered as to Count II is reversed. The judgment entered in case number 148-71 is reversed.

Affirmed in part, reversed in part.

SMITH, P. J., and TRAPP, J., concur.